COOKS, J.,
dissent.
1 plaintiff Naddia Melder (Melder)was injured in an auto accident when her vehicle was struck by a vehicle driven by Connie Turlington. Melder was working as an employee of Grimes Industrial Supply, L.L.C. The vehicle driven by Melder was titled to and owned by a different L.L.C., namely Grimes True Value Hardware, L.L.C. Both L.L.C.’s are owned by Frank Grimes and Floyd Grimes. The Grimes’ vehicle was insured under a policy with State Farm Insurance which was obtained to cover the vehicle on the day it was *451 purchased by Grimes True Value Hardware, L.L.C. The bank financing the purchase was named as an additional insured as the lienholder. On the declarations page of the policy the policy purports to be issued to: “Grimes, Floyd & Grime[s], Frank DBA Grimes True Value HDW Store, 8822 Highway 71 N Pineville, LA 71360-275.” The UM Selection Form for this policy indicates on two lines that Floyd Grimes signed that form rejecting UM coverage identifying him as the “Named Insured or Legal Representative” and that Floyd’s signature is the signature representing the “Signature of a Named Insured or Legal Representative[.]” State Farm paid the claim for the total loss of the Grimes’ vehicle by making a payment to the 12bank/lienholder for the balance on the loan, and paying the remaining amount to Grimes True Value Hardware, L.L.C. State Farm maintains there is no UM coverage on the policy insuring the Grimes’ vehicle as coverage was waived in writing.
This appeal was taken from the second ruling on State Farms Re-Fixed Motion for Summary Judgment. Previously, this court reversed the trial court’s granting of summary judgment in favor of State Farm and remanded the case finding there were unresolved genuine issues of material fact. This court held:
Simply stated, the policy purports to insure a vehicle belonging to Floyd and Frank Grimes, but Mr. Grimes[’] sworn affidavit states that the vehicle belongs to a limited liability company. Furthermore, the record contains no evidence of the authority by which Mr. Grimes executed the UM rejection, either on behalf of the limited liability company or the apparently non-existent partnership between himself and Frank Grimes. Given that unresolved material fact, the burden never shifted to the Melders in the summary judgment hearing.
The case was remanded to the trial court. No writ was filed with the State Supreme Court.
State Farm filed a second supplemental memorandum in support of its Motion for Summary Judgment which it asked to be re-fixed for hearing. Following a hearing on the re-fixed Motion for Summary Judgment, the trial court again granted summary judgment in favor of State Farm finding there is no UM coverage under the policy insuring the Grimes’ vehicle. The trial court dismissed Plaintiff’s claims against State Farm with prejudice. Plaintiffs appeal.
The majority affirms the trial court’s ruling applying the de novo standard of review. I disagree with the majority decision reversing the ruling of the previous panel of this court. The majority recognizes that Louisiana law favors UM coverage and that any exception to coverage must be strictly construed. It also |sacknowledges that the law requires adherence to strict formalities for rejecting UM coverage. The majority recites six requirements of form which must be met for a valid UM waiver: (1) the insured must initial the selection or rejection (2) if lower limits are selected the lower limit must be entered on the form denoting the exact limit (8) the insured or legal representative must sign the form evidencing the intent to waive UM coverage (4) the from must include his or her printed name to identify the signature (5) the insured dates the form to determine the effective date of the UM waiver and (6) the . form must include the policy number to demonstrate which policy it refers to. Because Floyd Grimes is the only person who signed the waiver form the majority sets out to determine if his signature meets the above criteria. The majority finds there is no genuine issue of material fact that *452 Floyd Grimes is an insured under the policy and as such signed a valid waiver of UM coverage on this policy for the subject vehicle.
I do not believe this matter is ripe for summary judgment. The majority, like the trial court, errs in making determinations of credibility, considering the merits of the case, evaluating deposition testimony and testimony by affidavit, and engaging in the weighing of evidence, all of which are not appropriate on summary judgment. As this court stated in Fusilier v. Dautrive, 99-692 (La.App. 3 Cir. 12/22/99), 759 So.2d 821, 831, reversed on other grounds by 2000-151 (La.7/14/00), 764 So.2d 74 (emphasis added):
The first issue that must be addressed in reviewing a trial court’s grant of summary judgment is whether any genuine issues of material fact exist. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94); 639 So.2d 730, appeal after remand, 96-1837 (La.9/27/96); 680 So.2d 1163. The reviewing court must next address whether reasonable minds could conclude, based on the facts presented, the mover is entitled to judgment. Id. In other words, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole |4issue remaining is the conclusion to be drawn from the relevant facts. Id.
In this case, the relevant facts are seriously disputed and Plaintiffs have put forth more than sufficient evidence to create factual disputes which cannot be resolved on summary judgment. As we have often stated: “Issues of credibility have no place in summary judgment procedure.” Hinds v. Clean Land Air Water Corp., 96-1058 (La.App. 3 Cir. 4/30/97); 693 So.2d 321. “Any of the State’s conclusions; which are contained within the records, cannot be substituted for the fact-finding process provided by a trial.” Carriere v. State, 708 So.2d 822, 824 (La. 3 Cir.1998) (emphasis added). The Plaintiffs have shown that they can put forth substantial evidence which calls into question many genuine issues of material fact necessary to a fair and full resolution of this matter. Summary judgment is not a substitute for a trial on the merits.
“It is not the court’s function on a motion for summary judgment to determine or even inquire into the merits of the issues presented. While deposition testimony may be used to support or oppose a motion for summary judgment, it may not be weighed.” Lexington House v. Gleason, 98-1818, p. 6 (La.App. 3 Cir. 3/31/99); 733 So.2d 123, 126 (citations omitted).
Mouton v. Sears Roebuck, 99-669 (La.App. 3 Cir. 11/31/99), 748 So.2d 61, 67, writ denied, 99-3386 (La.2/4/00), 754 So.2d 232 (emphasis added).
The majority bases its reasoning on its finding that Floyd Grimes is an insured under the policy because he had an insurable interest in the vehicle. It finds the affidavit presented in supplemental support of the re-fixed Motion for Summary Judgment shows that Floyd Grimes is a member of both the True Value LLC and the Industrial Supply LLC and is involved in the daily operations of both LLCs, and further finds these affidavits show that the truck was used by both LLCs. The majority states “Grimes’ attests that he purchased the State Farm Rpolicy, and he is listed as a ‘named insured[.]’ ” It further states “[Floyd] attests that the policy was issued to ‘Floyd Grimes and Frank Grimes d/b/a Grimes True Value Hardware Store and provided liability insurance’ for the Nissan truck. He attests that he signed *453 the ‘UM selection form and opted to reject UM coverage.’ ”
After Defendants filed the Motion to Re-fix the Motion for Summary Judgment and the attendant affidavits in support thereof, Plaintiffs took the deposition of Grimes True Value Hardware, LLC. Floyd Grimes appeared at the deposition as the designated representative of Grimes True Value Hardware, LLC. Plaintiffs also obtained the Allstate Insurance Company (the insurer of the Turlington vehicle) claim file regarding this accident. They assert that the documents obtained from Allstate, along with the deposition testimony of Floyd Grimes, demonstrate there are unresolved genuine issues of material fact which can only be resolved by a trial on the merits. Plaintiffs assert, as they previously asserted in the prior case before this court, that many material issues of fact remain unresolved including but not limited to the question regarding what person and/or entity constitutes the “named insured” on the policy; in what capacity did Floyd Grimes sign the UM rejection form; if Floyd Grimes signed the rejection form on behalf of the LLC did he have authority to do so. Plaintiffs aver that the evidence submitted at the hearing on the Re-fixed Motion for Summary Judgment shows that the vehicle was purchased by Grimes True Value Hardware, LLC with a loan from Union Bank, secured by the vehicle. The vehicle was titled in the name of the LLC and the bank was listed as a mortgage holder. The bank required the LLC to insure the vehicle and name Union Bank as an additional insured. Grimes True Value Hardware, LLC purchased the insurance policy via telephone conversation between Floyd Grimes and State Farm’s agent on August 21, 2006, the same day |fithe vehicle was purchased by the LLC. The LLC paid all premiums for the policy and paid all payments on the loan from Union Bank. At this point in the litigation there has been no testimony from the other member of the two LLCs. Plaintiff further asserts that the evidence shows that Floyd Grimes testified in deposition that he has never operated any business or sole proprietorship known as “Grimes True Value Hardware” or “Grimes True Value Hardware Store,” and the only entity which has ever operated at the address listed in the insurance policy is “Grimes True Value Hardware, LLC.” Plaintiff also maintains the evidence thus far shows that the rejection form was filled in by an employee of State Farm, Ms. Anderson. Anderson does not know on what date Floyd Grimes signed the rejection form and does not recall if she was even present when Floyd signed the form. Our court previously found that Floyd does not recall on what date he went to the insurance agency to sign the UM rejection form. No new light is shed on this question in the Re-fixed Motion for Summary Judgment hearing. State Farm asserts Floyd signed the rejection form in his personal capacity as “Floyd Grimes” d/b/a “Grimes True Value Hardware Store.” State Farm also asserts that the LLC is not insured for its vehicle under this policy and alternatively asserts Floyd signed for the LLC in his capacity as Manager and/or Member of the LLC with authority to bind the LLC. The facts remain genuinely disputed.
Plaintiff also asserts that the Operating Agreement governing the LLC provides: “No manager shall have the power to sign for or enter into contracts on behalf of the company, said power being reserved to the members, unless authorized by the members.” Plaintiff points out the trial court “made a factual finding that Floyd Grimes is the named insured under the policy and, regardless, the intent of the parties was to reject UM coverage.” Plaintiff correctly maintains |7that “In de *454 termining whether an issue is ‘genuine’, Courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence,” and cites numerous cases in support of their position. I agree with Plaintiffs cited line of cases for this proposition.
The majority further states that “the trial court stated that Floyd is a named insured since ‘he’s listed in the “dee” page as the named insured.’ We, therefore look to the evidence to determine whether Floyd is a named insured under the policy.” The majority then “reviews” the factual evidence and finds that Floyd Grimes had an insurable interest in the vehicle, and, as he is named on the policy as “Floyd Grimes DBA Grimes True Value HDW Store,” is an insured who may properly reject UM coverage. The majority again engages in inappropriate fact finding and determinations of credibility. It then proceeds to reason that the DBA designation “does not create an entity distinct from the person operating the business,” citing Trombley v. Allstate Ins. Co., 93-1669 (La.App. 3 Cir. 6/1/94), 640 So.2d 815 and Krawfish Kitchen Rest., Inc. v. Ardoin, 396 So.2d 990 (La.App. 3 Cir.1981). Thus, says the majority, the trial court correctly found that Floyd is a named insured on the policy who could reject UM coverage in his individual capacity.
Having engaged in making this determination, the majority next finds that the question of “in what capacity did Floyd sign the rejection form” is not an issue because the trial court found Floyd could sign in both his individual capacity as Floyd Grimes, and in a representative capacity for the LLC. This finding is made despite this issue being genuinely disputed by the parties and no court having yet heard from the other member of the LLCs who is also listed on the insurance policy. Nevertheless, the majority proceeds to “determine whether the evidence |sshows Floyd’s capacity to sign the waiver botli personally and representatively.”
The majority also determines that Floyd has a personal insurable interest in the vehicle under the jurisprudence defining an insurable interest as “any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.” The majority finds that ownership of the property is not a prerequisite for the existence of an insurable interest and then finds that Floyd is a member of both the LLC that owned the truck and the LLC that most often used the truck. It also finds that as there is no factual dispute Floyd used and depended on the truck in the daily operations of the LLC that he “had the right to possess and use the truck as part of his business, had a significant and substantial economic interest in the truck and that he was subject to pecuniary loss due to his inability to operate his business without the truck, sufficient to constitute an insurable interest.” Thus, the majority concludes, Floyd had the authority as one with an insurable interest to obtain coverage on the vehicle and reject UM coverage. The majority reasons that since Floyd is listed on the policy as “Floyd Grimes DBA” he personally/individually was a named insured who is now determined to have had an insurable interest and could therefore validly' reject UM coverage. This determination ignores substantial facts presented by Plaintiffs regarding the owner/purchaser/insurer of the vehicle owned by the LLC which disputes Defendant’s claims and the majority’s findings.
The majority also addresses the factual issue of whether Floyd could sign the rejection on behalf of the LLC if it would be determined that the policy insured the LLC, the only record title owner of the *455 vehicle. It concludes that the evidence shows he had such capacity as a member and/or manager of the LLC, and, finds |flthat Floyd’s “failure to state that he was signing the waiver in a representative capacity does not invalidate the waiver.”
The majority rejects Plaintiff’s assertion that there is a genuine issue of material fact as to whether the waiver should be invalidated because it is ambiguous and unclear as to the identity of the named insured and/or the unknown signatory capacity of Floyd. Plaintiff asserts:
[Tjhere is no way to determine if the UM rejection form was signed by the named insured or its legal representative simply by looking at the UM rejection form as prepared by State Farm and signed by Floyd Grimes. In fact, the parties themselves cannot agree on who the named insured is under the policy and whether Floyd Grimes signed the UM rejection form in his individual capacity or in a representative capacity. Adding to this ambiguity is the fact that the name Grimes True Value Hardware, LLC appears nowhere on the UM rejection form, and Floyd Grimes purchased all of his automobile insurance, personal and business, through the same State Farm agency, this ambiguity and lack of clarity invalidates the UM rejection form.
An unresolved ambiguity and/or lack of clarity on the UM rejection form would invalidate rejection of UM coverage. The majority acknowledges this is so.
Additionally, the majority acknowledges that there must be strict adherence to the formalities of what constitutes a valid waiver and lists among those formalities the specific requirement that the “insured” must date “the form to determine the effective date of the UM waiver.” Clearly this requirement remains completely unresolved in this case. At this stage the evidence presented by both parties shows that no one can say if or when Floyd Grimes dated his purported rejection of UM coverage. Thus, at present, there is not strict adherence to the requirements of a valid waiver. In order to reach the conclusions reached by the trial court and the majority one must engage in some serious fact finding, credibility determinations, and the weighing of evidence and deposition testimony |10presented in support of and in opposition to the Motion for Summary Judgment, and, one must overlook the fact that the date criteria listed by the majority as a strict requirement of formality is not met. I agree with the original panel’s finding that there are unresolved genuine issues of material fact. Plaintiffs have now introduced more than enough evidence to demonstrate that multiple issues necessary to the disposition of this case remain in serious dispute. With all due respect, I do not agree with the majority opinion because I believe it goes beyond what either the trial court or this court may do on a motion for summary judgment. For the reasons stated I respectfully dissent.